IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
June 06, 2024
LAURA A. AUSTIN, CLERK
BY: s/ S. Neily, Deputy Clerk

| | |
|---|---|
| JAMAL JAHA NUBI, | ) |
| Plaintiff, | ) |
| | ) Case No. 7:23-cv-797 |
| v. | ) |
| | ) By: Michael F. Urbanski |
| THE NUMERO GROUP L.L.C., | ) Chief United States District Judge |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This matter comes before the court on a motion to dismiss, ECF No. 31, filed by defendant The Numero Group L.L.C. ("Numero"). On April 25, 2024, the Honorable C. Kailani Memmer entered a Report and Recommendation, ECF No. 37, recommending that the court dismiss plaintiff Jamal Jaha Nubi's Complaint without prejudice for lack of personal jurisdiction over Numero. Alternatively, Judge Memmer recommends that the court find that Nubi's claims are time-barred. Nubi timely objected to the Report and Recommendation in its entirety. Upon de novo review, the court finds that Nubi has not alleged facts that show the court has personal jurisdiction over Numero. Accordingly, the court **ADOPTS** the Report and Recommendation on the issue of personal jurisdiction, and the Complaint is **DISMISSED** without prejudice.

I.

Nubi, proceeding pro se, claims that Numero infringed his copyright to the song "Our Love" when Numero licensed the song for use in the movies Moonlight and Roxanne, Roxanne. See Compl., ECF No. 6, ¶¶ 2–3. Nubi claims that he co-wrote and co-recorded Our

Love in 1980. Id. ¶ 2. In 2016, Numero licensed Our Love to be used in Moonlight and in 2018 licensed the song for use in Roxanne, Roxanne. Id. ¶ 3. Nubi alleges that Our Love was "purposefully and prominently used" in Moonlight and Roxanne, Roxanne without his permission, id. ¶ 6, and that Numero infringed on his copyright by licensing the song for use in the films, id. ¶¶ 17–18.

Nubi claims that Numero is an Illinois limited liability company with its principal place of business in Chicago, Illinois. Id. ¶ 14. Nubi does not allege any facts related to Numero's connections to the Commonwealth of Virginia or otherwise address the court's personal jurisdiction over Numero. Numero accepted service of process on January 22, 2024, in Bloomington, Indiana. See Process Receipt and Return, ECF No. 9, at 1, and this motion followed.

## II.

Any party may "serve and file specific, written objections" to a magistrate judge's proposed findings and recommendations within 14 days of being served with a copy of the report, per Rule 72(b) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 72(b); see also 28 U.S.C. § 636(b)(1). An objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007).

However, "objections need not be novel to be sufficiently specific," Elijah v. Dunbar, 66 F.4th 454, 461 (4th Cir. 2023) ("[D]istrict courts must solely consider the specificity, not the novelty, of objections to magistrate recommendations."), and pro se filings must be construed liberally, Erickson v. Pardus, 551 U.S. 89, 94 (2007). Therefore, "when reviewing

2

pro se objections to a magistrate's recommendation, district courts must review de novo any articulated grounds to which the litigant appears to take issue." Elijah, 66 F.4th at 460–61 (citing Martin v. Duffy, 858 F.3d 239, 245–46 (4th Cir. 2017)). "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); see also 28 U.S.C. § 636(b)(1).

Here, Nubi does not specifically identify the grounds for dismissal with which he takes issue. Nevertheless, he contests the recommendation that his case be dismissed, and therefore the court will address Numero's motion to dismiss de novo.

### III.

"When personal jurisdiction is properly challenged under Rule 12(b)(2), the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." Carefirst of Md, Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003) (citation omitted). However, where, as here, the court considers a challenge to personal jurisdiction without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction, rather than show jurisdiction by a preponderance of the evidence. Id. (citing Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)). "The court, in deciding whether a plaintiff has met this burden, must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Brooks v. Motsenbocker Advanced Devs., Inc., 242 F. App'x. 889, 890 (4th Cir. 2007). Additionally, "a court may look beyond the complaint to affidavits and

exhibits in order to assure itself of personal jurisdiction." UMG Recordings, Inc. v. Kurbanov, 963 F.3d 344, 350 (citing Grayson v. Anderson, 816 F.3d 262, 269 (4th Cir. 2016)). "If a plaintiff makes the requisite showing, the defendant then bears the burden of presenting a 'compelling case,' that, for other reasons, the exercise of jurisdiction would be so unfair as to violate due process." Reynolds Foil, Inc. v. Pai, No. 3:09-cv-657, 2010 WL 1225620, at *1 (E.D. Va. Mar. 25, 2010) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477–78 (1985)). "For purposes of the motion to dismiss, the reviewing court may presume that any uncontradicted evidence submitted by either party is true." Id.

The court employs the traditional two-step analysis to resolve the personal jurisdiction dispute at issue. The court must decide first whether Virginia's long-arm statute, Va. Code Ann. § 8.01-328.1, permits the court to exercise personal jurisdiction over the defendants, and second whether the exercise of such jurisdiction comports with the due process requirements of the Fourteenth Amendment.[1] See Kurbanov, 963 F.3d at 350–51; ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 622 (4th Cir. 1997) ("[O]ur inquiry into the federal court's jurisdiction . . . incorporates the Fourteenth Amendment due process standard, even though that Amendment applies of its own force only to states."). Virginia's long-arm statute extends personal jurisdiction to the extent permitted by due process, and therefore "the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially

---

[1] There is some debate as to whether the Fifth Amendment's Due Process Clause, not that of the Fourteenth Amendment, governs the personal jurisdiction inquiry in cases that raise federal questions, such as copyright infringement. See Autoscribe Corp. v. Goldman & Steinberg, No. 94-1749, 1995 WL 56662, at *3 (4th Cir. Feb. 3, 1995) ("While there is some uncertainty as to the proper application of this second step, Omni suggests that in federal question cases, it is the Due Process Clause of the Fifth Amendment that governs this second step, rather than the Due Process Clause of the Fourteenth Amendment, which controls in the second step in diversity cases." (citing Omni Cap. Int'l v. Rudolf Wolff & Co., 484 U.S. 97, 102–03 (1987)). Regardless, the analysis is the same.

become one." Young v. New Haven Advocate, 315 F.3d 256, 261 (4th Cir. 2002) (quoting Stover v. O'Connell Assocs., Inc., 84 F.3d 132, 135–36 (4th Cir. 1996)).

The court must determine whether Numero maintains sufficient minimum contacts with the forum state so as not to offend "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). "The minimum contacts inquiry requires [a plaintiff] to show that [a defendant] 'purposefully directed his activities at the residents of the forum' and that [the plaintiff's] cause of action 'arise out of' those activities." Kurbanov, 963 F.3d at 351 (quoting Burger King, 471 U.S. at 472). The Supreme Court has instructed that "the minimum contacts analysis must focus 'on the relationship among the defendant, the forum, and the litigation.'" Id. (quoting Walden v. Fiore, 571 U.S. 277, 283 (2014)).

A party's contacts with the forum state may establish general or specific personal jurisdiction. "To establish general jurisdiction over the defendant, the defendant's activities in the State must have been 'continuous and systematic.'" ALS Scan, Inc. v. Dig. Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002). Where "a defendant's contacts with the State are also the basis for the suit, those contacts may establish specific jurisdiction." Id.

### A. General Jurisdiction

"A court may assert general jurisdiction over foreign . . . corporations to hear any and all claims against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011). Like a corporation, an LLC is at home in its "place of incorporation and principal place of business." Daimler AG v. Bauman, 571 U.S. 117, 137

5

(2014) (evaluating the issue of general jurisdiction over an LLC based on its place of incorporation and principal place of business); see also Finn v. Great Plains Lending, LLC, No. 15-4658, 2016 WL 705242, at *3 n.3 (E.D. Penn. Feb. 23, 2016) ("While Great Plains is an LLC and not a corporation, the reasoning of Daimler applies with equal force."); Mountain Funding, LLC v. Blackwater Crossing, LLC, No. 3:05-cv-513, 2006 WL 1582403, at *3 (W.D.N.C. June 5, 2006) ("[T]he practice of disregarding a limited liability company as an entity and looking to the citizenship of its members is only used to determine whether a court has diversity for subject matter jurisdiction . . . [t]his principle has not been applied to personal jurisdiction, which presents distinct due process issues."). Here, Numero is a limited liability company organized under the laws of Illinois with its principal place of business in Chicago, Illinois. Nubi does not allege that Numero has any continuous or systematic business in Virginia. Accordingly, the court lacks general jurisdiction over Numero.

## B. Specific Jurisdiction

The Fourth Circuit has "synthesized the due process requirements for asserting specific personal jurisdiction" into the following three-prong test: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable."[2] Kurbanov, 963

---

[2] The Fourth Circuit has identified a separate test promulgated by the Supreme Court to assess minimum contacts applicable when a nonresident defendant "has intentionally directed his tortious conduct toward the forum state, knowing that the conduct would cause harm to a forum resident." Carefirst, 334 F.3d at 397–98 (citing Calder v. Jones, 465 U.S. 783 (1984)). That test is not applicable here as Nubi does not allege that Numero intentionally infringed upon his copyright.

F.3d at 352 (quoting Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009)).

> [Courts] do more than formulaically count contacts, instead taking into account the qualitative nature of each of the defendant's connections to the forum state. In that vein, "a single act by a defendant can be sufficient to satisfy the necessary 'quality and nature' of such minimal contacts, although 'casual' or 'isolated' contacts are insufficient to trigger" an obligation to litigate in the forum.

Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co., Ltd., 682 F.3d 292, 301 (4th Cir. 2012).

Purposeful availment "concerns whether and to what extent 'the defendant purposefully avail[ed] himself of the privilege of conducting business under the laws of the forum state." Kurbanov, 963 F.3d at 352 (brackets in original) (quoting Consulting Eng'rs Corp., 561 F.3d at 278). This inquiry "is flexible, and [the court's] analysis proceeds on a case-by-case basis." Tire Eng'g & Distrib., 682 F.3d at 302. Various factors the court considers at this prong include:

> (1) whether the defendant maintained offices or agents in the State; (2) whether the defendant maintained property in the State; (3) whether the defendant reached into the state to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the State; (5) whether a choice of law clause selects the law of the State; (6) whether the defendant made in-person contact with a resident of the State regarding the business relationship; (7) whether the relevant contracts required performance of duties in the State; and (8) the nature, quality, and extent of the parties' communications about the business being transacted.

Id. (citing Sneha Media & Entm't, LLC v. Associated Broad. Co. P Ltd., 911 F.3d 192, 198–99 (4th Cir. 2018)). The court focuses on "the quality and nature of the defendant's connections,

not merely the number of contacts between the defendant and the forum state." Id. (emphasis in original) (citing Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co., Ltd., 682 F.3d 292, 301 (4th Cir. 2012)).

In Kurbanov, the Fourth Circuit considered whether a federal court in Virginia had specific personal jurisdiction over an individual who lived in Rost-on-Don, Russia. Id. at 348. Twelve record companies sued Tofig Kurbanov for copyright infringement stemming from his operation of two stream-ripping websites that allowed visitors to extract audio tracks from videos on YouTube and other platforms. Id. Kurbanov exclusively operated the websites from Russia, he never had employees in the United States, or even visited the United States, much less Virginia. Id. at 349. However, the websites garnered 500,000 visitors based in Virginia from 2017 to 2018, and two of the websites' administrators were headquartered in Virginia. Id. Moreover, for part of the relevant time, the websites' servers were hosted by Amazon Web Services, which had servers physically located in Virginia. Id.

The court found that Kurbanov's contacts with Virginia were sufficient to establish purposeful availment. Id. at 353. The court reasoned that "his contacts with Virginia are plentiful," citing the "more than half a million unique visitors . . . totaling nearly 1.5 million visits" from Virginia who went to the websites. Id. Moreover, the court observed that "the nature of the repeated interaction between the [w]ebsites and visitors" qualified as "a commercial relationship" because the visitors agreed through the terms of service to allow Kurbanov to collect and share personally identifying data, which he then sold to advertisers. Id. Though he relied on third-party advertising brokers to sell advertising space on his

8

websites, Kurbanov nonetheless "earn[ed] revenues precisely because the advertising is targeted to visitors in Virginia." Id. at 353–54.

Nubi alleges that Numero licensed Our Love for use in the films Moonlight and Roxanne, Roxanne, both of which were distributed to and shown in movie theaters throughout Virginia. Further, viewers have certainly watched the films in their Virginia homes. However, these interactions are insufficient to show that Numero's contacts with Virginia are sufficient to establish purposeful availment. Unlike Kurbanov, where the Russian defendant received a continuous revenue stream from the sale of advertisements targeted to Virginia residents, here, Numero received one-time fees to license Our Love of $750 for use in Moonlight and $1,500 for use in Roxanne, Roxanne. See Pl.'s Opp. to Mot. to Dismiss, ECF No. 34, at 2 (email from Leigh Isaac, Associate General Counsel for Numero, recounting the fees and stating that "it is industry standard that synchronization licenses are subject to one-time fees, rather than ongoing royalties contingent on a film's success"). These payments were not specific to the films' appearances in Virginia—Moonlight and Roxanne, Roxanne were distributed across the globe, yet Numero did not receive additional payment. While Kurbanov received additional revenue with each advertisement targeted to a Virginia user, Numero's payment remained the same regardless of how frequently the films were viewed in Virginia, if at all. Moreover, Numero did not tailor its license of Our Love to a Virginia-specific version of these films—the movies feature Our Love in the same manner whether viewed in Virginia or elsewhere.

Additionally, Numero had no control over the distribution of Moonlight and Roxanne, Roxanne. The Supreme Court has emphasized that, to exercise specific personal jurisdiction,

the forum state and a defendant must have a "relationship [that] . . . arise[s] out of contacts that the 'defendant himself' creates with the forum state." Walden, 571 U.S. at 284 (quoting Burger King, 471 U.S. at 475). The Court unanimously explained that "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." Id. at 285. Here, Nubi does not allege facts that plausibly show that Numero established contacts itself with Virginia. Instead, Numero licensed Our Love to the producers of Moonlight and Roxanne, Roxanne, who then distributed the films across the world. For its part, Numero, an Illinois company, received a flat fee of $2,250, which did not depend on whether the films were shown in Virginia.

Nubi has not alleged that Numero purposefully availed itself of the privilege of conducting activities in Virginia. Accordingly, the court lacks personal jurisdiction over Numero.

### IV.

For the reasons stated above, the court **ADOPTS** the Report and Recommendation on the issue of personal jurisdiction, and the Complaint is **DISMISSED without prejudice**.

An appropriate order will be entered.

Entered: June 5, 2024

Michael F. Urbanski
Chief United States District Judge